GTE CORPORATION, Plaintiff-Appellee,

v.

David R. WILLIAMS, d/b/a General Telephone, Defendant-Appellant.

No. 83–1545.

United States Court of Appeals, Tenth Circuit.

April 6, 1984.

Robert S. Campbell, Jr., Salt Lake City, Utah (E. Barney Gesas, also of Watkiss & Campbell, and Anthony L. Rampton of Fabian & Clendenin, Salt Lake City, Utah, with him on the brief), for defendant-appellant.

Jeffrey A. Schwab, New York City (Lawrence E. Abelman, also of Abelman, Frayne & Rezac, New York City, Philip Mallinckrodt and Robert Mallinckrodt of Mallinckrodt, Mallinckrodt, Russell & Osborne, Salt Lake City, Utah, with him on the brief), for plaintiff-appellee.

Before BARRETT, McKAY and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

Defendant David R. Williams appeals from an order granting plaintiff GTE Corporation's motion for a preliminary injunction. The principal issue on appeal is the relevance of delay in seeking relief from trademark infringement as a factor in determining whether to grant a preliminary injunction *pendente lite*.

In December 1982 GTE brought suit seeking damages and injunctive relief against Williams for trademark infringement under the Lanham Act, 15 U.S.C. §§ 1051–1127, and for common law trademark infringement under pendent jurisdiction. GTE claimed that Williams had infringed its rights in the trademark "General Telephone" by using that name to market mobile telephone equipment and services in the Wasatch Front area of Utah. A little over a month later GTE moved for a preliminary injunction.

The hearing on the motion for a preliminary injunction took place in March 1983. In memoranda filed before the hearing both parties acknowledged that a party seeking a preliminary injunction must establish: (1) that it has a substantial likelihood of success on the merits; (2) that the movant will suffer irreparable injury if the preliminary injunction is not granted; (3) that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party;

and (4) that the injunction will not be adverse to the public interest. *Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir.1980). After the hearing and after reviewing the memoranda and documents filed in the case, the trial court granted GTE's motion for a preliminary injunction.

From 1935 to 1959 "General Telephone" was the name of the corporation that is now GTE Corporation. It then became "General Telephone and Electronics Corporation," and in 1982 it became "GTE Corporation." Most of GTE's regional subsidiaries have names that begin with the words "General Telephone Company of." The corporation applied for a federal registration for the trademark "General Telephone" in 1981 and received it in 1982. GTE, through subsidiaries, provides mobile telephone equipment and services, but does not provide such equipment and services in Utah.

Williams has been in the mobile telephone business since 1954 and has been using the name "General Telephone" since approximately 1974. Williams uses "General Telephone" only for marketing; for other purposes he uses the name "Industrial Communications." Because Williams claimed his lack of knowledge would prevent GTE from succeeding on the merits, both parties agreed to focus on whether Williams had knowledge of GTE's use of the mark "General Telephone" when he began doing business under that name.

The court found that the name "General Telephone" was well known nationally in the late 1960s and early 1970s. It found that Williams knew of a company using the name "General Telephone and Electronics" before he began using the name "General Telephone," but made no finding on Williams' denial of knowledge of GTE's use of "General Telephone" as a name and trademark. The trial court also found that GTE had known about Williams' use of the mark "General Telephone" since 1979. As conclusions of law, the trial court set out the four factors necessary to support a preliminary injunction. It found that there was a

"substantial likelihood" GTE would succeed on the merits. The court concluded that GTE would suffer irreparable harm if it did not order the preliminary injunction but did not explain the basis for its conclusion. Subsequently, upon consideration of Williams' motion for a stay pending appeal, the court expressed doubt about the adequacy of the record to support a preliminary injunction and, therefore, granted the stay.

On appeal Williams contends that the trial court did not properly consider whether denial of a preliminary injunction would irreparably harm GTE and whether the balance of hardships tipped in GTE's favor. Specifically, Williams contends that the trial court did not accord appropriate weight to GTE's delay in bringing suit.

■■■ A preliminary injunction is an extraordinary remedy; it is the exception rather than the rule. *United States v. Lambert*, 695 F.2d 536, 539 (11th Cir.1983). In determining whether a preliminary injunction is warranted, a court must be guided by normal equitable principles and must weigh the practicalities of the situation. *Consumers Union of United States, Inc. v. Theodore Hamm Brewing Co.*, 314 F.Supp. 697, 699–700 (D.Conn.1970).

■■ The key to proving trademark infringement is showing a likelihood of confusion as to the source of the product or service. 15 U.S.C. § 1114. GTE suggests that the trial court's finding of a "substantial likelihood" that GTE would succeed on the merits diminishes the importance of a showing of irreparable injury. The likelihood of success, though, is only one factor to be considered on a motion for a preliminary injunction. Irreparable injury is equally important. *American Radio Association v. Mobile Steamship Association*, 483 F.2d 1, 4 (5th Cir.1973). The apparent weakness of Williams' case does not obviate GTE's burden of showing irreparable harm.

Some cases suggest that a preliminary showing of likelihood of confusion alone is a sufficient showing of irreparable injury to support a preliminary injunction. *Paco Rabanne Parfums v. Norco Enterprises, Inc.*, 680 F.2d 891, 894 (2d Cir.1982) (likelihood of damage to good will and reputation caused by confusing similarity entitles a plaintiff to a preliminary injunction); *P. Daussa Corp. v. Sutton Cosmetics (P.R.) Inc.*, 462 F.2d 134, 136 (2d Cir.1972) (confusing similarity is itself sufficient injury to support a preliminary injunction); *Wesley-Jessen Division of Schering Corp. v. Bausch & Lomb Inc.*, 698 F.2d 862, 867 (7th Cir.1983) (a trademark owner's inability to control the quality of the infringing party's product is irreparable injury). Presumably the trial court was relying on such cases when it stated at the beginning of the hearing that it did not think the showing of irreparable harm had to be great in a trademark case. However, we do not read those cases as saying that irreparable harm is an insignificant factor in considering motions for preliminary injunctions in trademark cases; rather, they stand for the proposition that infringement alone can constitute irreparable injury and that the movant is not required to show that it lost sales or incurred other damage.

■■ Delay in seeking relief, however, undercuts any presumption that infringement alone has caused irreparable harm *pendente lite;* therefore, such delay may justify denial of a preliminary injunction for trademark infringement.

> "Although plaintiff contends that it will be irreparably harmed should defendants' activities not be enjoined, it has waited nearly a year before seeking any relief. Delay of this nature undercuts the sense of urgency that ordinarily accompanies a motion for preliminary relief and suggests that there is, in fact, no irreparable injury."

*Le Sportsac, Inc. v. Dockside Research, Inc.*, 478 F.Supp. 602, 609 (S.D.N.Y.1979) (footnote omitted). *See also Exxon Corp. v. Xoil Energy Resources, Inc.*, 552 F.Supp. 1008, 1012 (S.D.N.Y.1981); *Programmed Tax Systems, Inc. v. Raytheon Co.*, 419 F.Supp. 1251, 1255 (S.D.N.Y.1976); J. Gilson, *Trademark Protection and*

*Practice* § 8.07[1] (1984) ("Undue delay in seeking [a preliminary injunction] once plaintiff has, or should have, knowledge of the infringement will probably result in its denial."); *cf. Ideal Industries v. Gardner Bender, Inc.*, 612 F.2d 1018, 1025 (7th Cir. 1979), *cert. denied*, 447 U.S. 924, 100 S.Ct. 3016, 65 L.Ed.2d 1116 (1980) (delay is a factor to be considered in assessing irreparable injury).

■ Williams had been using the name "General Telephone" for at least eight years before GTE brought suit. The trial court found that GTE had known about Williams' use of the mark since at least 1979, three years before GTE brought suit or notified Williams of its objection to his use of "General Telephone." This indicates GTE officials felt no sense of urgency. The confusion or potential confusion has existed for a decade. Any injury that GTE would suffer before trial on the merits would be a relatively short extension of the injury that GTE knowingly suffered for three years before it filed suit. Most of the advantage from Williams' use of the name "General Telephone" has already accrued to him, and control of the quality of the products and services sold under the name "General Telephone" in the Wasatch Front area of Utah has long been in Williams' hands. The harm to GTE and the public "cannot be materially aggravated or extended in the interim." *Ward Baking Co. v. Oak Park Baking Co.*, 278 F. 627, 628 (D.Del.1922). Thus, GTE's delay in bringing suit diminishes the significance, for purposes of a preliminary injunction, of a showing of confusing similarity. GTE does not sell mobile telephone equipment and services in the Salt Lake City area. GTE has suggested no lost sales or other damage to reputation likely to occur *pendente lite.* We must conclude, therefore, that the harm to GTE from denial of a preliminary injunction would be inconsequential.

■ Also, a preliminary injunction would impose substantial hardship upon Williams. If Williams must change his trade name now, it is probably unrealistic to expect he would change the name back to "General Telephone" again if he won on the merits. The burden on the party seeking a preliminary injunction is especially heavy when the relief sought would in effect grant plaintiff a substantial part of the relief it would obtain after a trial on the merits. *Consumers Union of United States, Inc. v. Theodore Hamm Brewing Co.*, 314 F.Supp. 697, 699 (D.Conn.1970). *See* J. Gilson, *Trademark Protection and Practice* § 807[1] (1984).

In holding that delay is an important consideration in the assessment of irreparable harm for purposes of a preliminary injunction, we do not consider whether the defense of laches would bar relief at trial.

> "[W]hile laches may not be sufficient to bar a permanent injunction it may well be a bar to preliminary relief. A preliminary injunction is sought upon the theory that there is an urgent need for speedy action to protect the plaintiff's rights. By sleeping on its rights a plaintiff demonstrates the lack of need for speedy action and cannot complain of the delay involved pending any final relief to which it may be entitled after a trial of all the issues."

*Gillette Co. v. Ed Pinaud, Inc.*, 178 F.Supp. 618, 622 (S.D.N.Y.1959). *See also* J. Gilson, *Trademark Protection and Practice* § 8.12[12][*l*][iv] (1984). Also, although the term "laches" is sometimes used simply to mean delay, the defense of laches is sometimes said to require detrimental reliance, an issue we do not have before us. *See Helene Curtis Industries v. Church & Dwight Co.*, 560 F.2d 1325, 1334 (7th Cir.1977), *cert. denied*, 434 U.S. 1070, 98 S.Ct. 1252, 55 L.Ed.2d 772 (1978).

■ We hold that when movant shows no specific harm other than the harm that is presumed to exist when there is a likelihood of confusion, movant's delay in bringing suit is an important factor in determining irreparable harm. We hold that the trial court abused its discretion in finding that the burden of hardships weighed in GTE's favor and thus erred in granting a preliminary injunction.

REVERSED and REMANDED with directions to deny the preliminary injunction *pendente lite*.