Louise **BANNISTER**, Plaintiff,

v.

The **BOARD OF COUNTY COMMISSIONERS OF LEAVENWORTH COUNTY, KANSAS,** Defendant.

**Civ. A. No. 93–2345–GTV.**

United States District Court, D. Kansas.

Aug. 31, 1993.

Jeffrey L. Baxter, Jeffrey E. Goering, Chapman, Waters & Baxter, Leavenworth, KS, for plaintiff.

David C. VanParys, County Counselor, Leavenworth, KS, for defendant.

## MEMORANDUM AND ORDER

VAN BEBBER, District Judge.

Plaintiff Louise Bannister filed a complaint in this court on August 19, 1993, alleging that the drug testing policy of the defendant Board of County Commissioners of Leavenworth County, Kansas, is unconstitutional as applied to her. Plaintiff brings this action under 42 U.S.C. § 1983 and seeks injunctive relief, back pay and benefits for the time period when plaintiff was suspended without pay from her position as secretary to the Leavenworth County Council on Aging for refusing to submit to a drug test, other monetary damages, a declaration that the policy is unconstitutional, and attorney fees.

On August 23, 1993, the court entered a temporary restraining order (Doc. 9) in this case prohibiting the defendant Board of County Commissioners from terminating plaintiff's employment and ordering her reinstatement in the event she had already been terminated. Plaintiff has now moved for a preliminary injunction (Doc. 10). Defendant has responded (Doc. 13) and opposes the preliminary injunction. On August 30, 1993, the court conducted an evidentiary hearing on plaintiff's motion. The parties appeared as follows: plaintiff in person and by counsel Jeffrey Baxter and Jeffrey Goering; defendant by Commissioner Donald Aaron and counsel David Van Parys. The court has considered the evidence and the arguments presented. Pursuant to Rule 52(a) of the Federal Rules of Civil Procedure the court makes the following findings of fact and conclusions of law:

### FINDINGS OF FACT

1. Plaintiff Louise Bannister is employed as the secretary to the Leavenworth County Council on Aging. She has been employed by Leavenworth County since 1981.

2. Defendant Board of County Commissioners of Leavenworth County, Kansas, is the elected governing board of Leavenworth County, Kansas, a municipality organized pursuant to the laws of the State of Kansas.

3. In August, 1992, plaintiff learned at a meeting of county employees that Leavenworth County had adopted a policy known as the "Leavenworth County Drug–Free Workplace Policy."

4. Plaintiff also learned that her position was deemed by the County to be "safety sensitive" and that she would be subject to random drug testing pursuant to the policy.

5. After the meeting, plaintiff notified her supervisor, Vickie Greene, that she objected to her classification as safety sensitive. She also wrote a letter dated November 1, 1992, to County Counselor David Van Parys objecting to the classification.

6. Plaintiff never received any response to her letter.

7. On August 11, 1993, at approximately 9:30 or 10 a.m. plaintiff received notice that she was to report to Cushing Hospital before 1 p.m. that day for a drug test.

8. Plaintiff reiterated her objection to being classified as a safety sensitive employee by writing it on the drug testing form she was supposed to take to Cushing Hospital when she reported for the drug test. Plaintiff took copies of the form with her comments written on it to the County Commissioners and to the head of personnel for Leavenworth County.

9. Plaintiff received a phone call from County Counselor David Van Parys indicating that it was very important that she report for the drug test.

10. Plaintiff did not report for the drug test.

11. On the next morning, at approximately 9:45 a.m., plaintiff received a hand-delivered note informing her that she was suspended on leave without pay due to her failure to submit to the drug test.

12. Plaintiff's duties as secretary to the Leavenworth County Council on Aging primarily consist of clerical work. Plaintiff also serves as the volunteer coordinator for the council on aging.

13. Plaintiff occasionally drives her private vehicle to deliver "meals on wheels" to county elderly if volunteers do not show up. Although plaintiff drives her own vehicle, she has access to a county vehicle.

14. The frequency with which plaintiff operated her vehicle in conjunction with her employment varies, although she does not do so more than two times per week.

15. Plaintiff also trains volunteers as part of her duties.

16. The reviews plaintiff has received during her employment with Leavenworth County have been satisfactory.

17. Plaintiff's supervisor, Vickie Greene, has never had an occasion to suspect plaintiff of drug use. Ms. Greene testified that she has received training on recognizing signs of drug impairment and that plaintiff has never exhibited any such signs.

18. In Ms. Greene's opinion, driving a vehicle is an essential part of plaintiff's duties.

19. The Leavenworth County drug policy was developed and written in conjunction with the Mental Health Consortium of Topeka, Kansas.

20. The drug policy provides for drug testing based upon reasonable suspicion of drug use, random testing of employees deemed to be in safety sensitive positions, post-accident testing of county employees involved in accidents, and pre-employment testing. Those employees chosen for random drug testing each month are selected by computer from the pool of employees deemed safety sensitive.

21. All employees of Leavenworth County have been deemed to be safety sensitive.

22. The Leavenworth county drug policy was designed to preserve the confidentiality of those tested through procedures for protecting the chain of custody of samples, the giving of samples without an observer present, and the reporting of results only to the Chairman of the Board of County Commissioners or his designee. An employee whose test produces a positive result is mandatorily referred to the county's employee assistance program.

23. County Commissioner Donald Aaron testified that he believes all aspects of plaintiff's job are safety sensitive, not just driving a vehicle.

24. Commissioner Aaron also testified that the purpose of the drug testing was for employee assistance, as well as public safety.

25. Plaintiff testified that she objects to the random drug testing because she feels insulted and resents being treated "like a criminal."

## CONCLUSIONS OF LAW

1. The court has jurisdiction over the parties and this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1983. Personal jurisdiction and venue are appropriate in this district. The case is properly before the court.

2. The standards governing the issuance of a preliminary injunction are clear. To obtain a preliminary injunction, plaintiff must show that: (1) she will suffer irreparable injury unless the preliminary injunction issues; (2) there is substantial likelihood that plaintiff will prevail on the merits; (3) the threatened injury to plaintiff outweighs whatever damage the proposed injunction may cause to the defendant; and (4) the injunction would not be adverse to the public interest. *Tri–State Generation and Transmission Ass'n, Inc. v. Shoshone River Power, Inc.*, 805 F.2d 351, 355 (10th Cir.1986). A preliminary injunction is an extraordinary remedy that is the exception rather than the rule. *GTE Corp. v. Williams*, 731 F.2d 676, 678 (10th Cir.1984).

3. None of the above factors, taken individually, is dispositive; rather, the court must weigh each factor against the other factors and against the form and magnitude of relief sought. "Thus, the more the balance of hardships weighs in favor of the moving party, the less a showing of success on the merits must be made." *Amalgamated Transit Union Local 1277, AFL–CIO v. Sunline Transit Agency*, 663 F.Supp. 1560, 1564 (C.D.Cal.1987).

4. As to the first factor to be considered before issuing a preliminary injunction, it is well-established that a violation of the constitutional right to be free from unreasonable search and seizure protected by the Fourth Amendment causes irreparable harm where monetary recovery could not remedy the constitutional violation. *American Federation of Government Employees, Local 1857 v. Wilson*, 1990 WL 208749, at *14 (E.D.Cal.1990) (citing *Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir.1983)). Urinalysis testing constitutes a search within the meaning of the Fourth Amendment. *Skinner v. Railway Labor Exec. Ass'n*, 489 U.S. 602, 617, 109 S.Ct. 1402, 1413, 103 L.Ed.2d 639 (1989); *National Treasury Employees Union v. Von Raab*, 489 U.S. 656, 665, 109 S.Ct. 1384, 1390, 103 L.Ed.2d 685 (1989). Because the injury inflicted by an unconstitutional drug test cannot be remedied by a damage award, the court concludes that plaintiff has established that she will be irreparably harmed if an injunction does not issue.

5. As to the second factor, the court concludes that there is a substantial likelihood that plaintiff will prevail on the merits of this action. For the reasons explained in the following paragraphs, plaintiff has demonstrated that she is likely to succeed on her claim that the drug testing policy of the Board of Leavenworth County Commissioners is unconstitutional as applied to her.

6. The Fourth Amendment protects "[t]he right of people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV. As stated above, the Supreme Court has determined urinalysis drug testing to be a search implicating the Fourth Amendment when the testing is done by a governmental entity. Leavenworth County is a governmental entity.

7. The county's urinalysis policy must therefore meet the reasonableness requirement of the Fourth Amendment. *Watson v. Sexton*, 755 F.Supp. 583, 588 (S.D.N.Y.1991). Generally, a search will not be deemed reasonable under the Fourth Amendment unless accompanied by a warrant and probable cause. *Skinner*, 489 U.S. at 619, 109 S.Ct. at 1414. The Supreme Court has recognized certain exceptions to this rule, however, when special needs make the warrant and probable cause requirements impracticable. *Id.* In *Skinner* and *National Treasury Employees Union*, the Court held that the government's compelling interests in public safety, maintaining the integrity of its work force, and protecting "truly sensitive information" justified suspicionless, random drug testing without a warrant or probable cause. *American Federation of Government Employees, Local 1857*, slip op. at * 9.

8. In order to determine the reasonableness of the Leavenworth random drug testing policy as applied to plaintiff, the court must balance the individual privacy interests and expectations against any legitimate government interests implicated. *National Treasury Employees Union*, 489 U.S. at 656, 109 S.Ct. at 1384.

9. In *Skinner*, the Supreme Court recognized that the procedures necessary for collecting urine samples "require employees to perform an excretory function traditionally shielded by great privacy." 489 U.S. at 626, 109 S.Ct. at 1418. Further, urinalysis testing can reveal a "host of private medical facts about an employee, including whether he or she is epileptic, pregnant, or diabetic." *Id.* at 617, 109 S.Ct. at 1413. The Court also stated that "it is clear that the collection and testing of urine intrudes upon expectations of privacy that society has long recognized as reasonable...." *Id.* Thus, this court concludes that the privacy concerns of plaintiff in this case are great.

■ 10. On the other hand, the court concludes that defendant has not shown any compelling interest which justifies suspicionless, random drug testing of plaintiff based upon her position with the Leavenworth County Council on Aging. The government argues that because plaintiff's job requires her to drive her private vehicle on occasion to deliver "meals on wheels" to Leavenworth County elderly she was properly deemed safety sensitive. However, credible evidence adduced during the hearing on this preliminary injunction has demonstrated that plaintiff drives her private vehicle to deliver the meals no more than twice a week, and then only when the county's volunteers do not show up. Plaintiff's duties are primarily clerical in nature.

11. In *Watson v. Sexton*, 755 F.Supp. 583, 589 (S.D.N.Y.1991), the court addressed the issue of whether the fact that an employee of the city department of sanitation occasionally drove her private car gave the government a compelling interest in public safety justifying suspicionless drug testing. The court announced the following rule of thumb: "When the employee's duties require driving, such as the duties of one who patrols or makes pick-ups, that employee's position is safety sensitive. When driving is only incidental to other duties that engage no safety concern, the employee's position is not safety sensitive." *Id.*

12. This court agrees with the analysis announced by the *Watson* court, and concludes that plaintiff's position falls into the second category. Plaintiff's use of her private motor vehicle is incidental to her other duties as secretary for the Leavenworth County Council on Aging. That incidental use does not render her "safety sensitive."

13. Plaintiff has demonstrated that defendant will be unable to meet its burden of establishing the existence of a compelling government interest sufficient to overcome plaintiff's individual privacy interests. The court concludes that plaintiff will probably prevail at a trial on the merits of whether defendant's drug testing policy is unconstitutional as applied to her.

■ 14. As to the third factor relevant to a determination of whether a preliminary injunction should issue, the court concludes that the threatened constitutional injury to plaintiff outweighs whatever damage the proposed injunction may cause to the defendant. In fact, the county has identified no objective basis from which the court could conclude that there is a widespread drug abuse problem among county employees. Further, plaintiff is by all accounts a loyal and satisfactory employee. Therefore, the court perceives no damage which would be caused to the defendant should this preliminary injunction issue. In contrast, plaintiff's privacy rights might be infringed by unjustified urinalysis testing if the preliminary injunction did not issue.

■ 15. Finally, with respect to the fourth factor which the court must consider, the court concludes that an injunction would not be adverse to the public interest in this case. An injunction may prevent the infringement of plaintiff's privacy rights under the Fourth Amendment.

16. In conclusion, the court finds that each of the four factors to be considered favors the granting of a preliminary injunction in this case. Taking all factors together, the court is led ineluctably to conclude that plaintiff's motion for preliminary injunction must be granted.

IT IS, THEREFORE, BY THE COURT ORDERED that plaintiff's application for preliminary injunction (Doc. 10) is granted. The Board of County Commissioners of

Leavenworth County is restrained from terminating plaintiff's employment during the period this preliminary injunction is in effect.

IT IS FURTHER ORDERED that no surety bond shall be required.

**IT IS SO ORDERED.**